## Case No. 11,870.

### The R. L. MAYBEY.

[4 Blatchf. 88.] [1]

Circuit Court, S. D. New York. Sept. 14, 1857. [2]

TOWAGE — PRIVILEGE OF POSITION — COLLISION — RIVAL TUGS — INTENTIONAL WRONG.

1. As a general rule, where two steam-tugs are both of them endeavoring to be the first to reach a sailing vessel, for the purpose of taking off her passengers or towing her, the tug which first arrives to speak for the employment, is entitled to its position, and the other tug must see to it that a collision between them is avoided.

2. Where, on a libel filed to recover damages for a collision between two such tugs, such privilege of position is not shown in favor of the libelling tug, the libel will be dismissed.

3. Where two such tugs are approaching a vessel for such purpose, the one approaching in the wake of the vessel's course, has no superior right, by reason of that fact alone, to first speak to the vessel, over the other tug, which is approaching from another direction.

4. Where a collision occurs by the wilful fault or intentional wrong of both parties, the damages will not be apportioned, but the libel will be dismissed.

[Appeal from the district court of the United States for the Southern district of New York.]

This was a libel in rem, filed in the district court, by Russell Sturgis, owner of the steam-tug Hector, against the steam-tug R. L. Maybey, to recover damages growing out of a collision between the two vessels, which occurred outside of Sandy Hook, on the morning of the 11th of August, 1854. The district court dismissed the libel [case unreported], and the libellant appealed to this court.

John E. Burrill, for libellant.

Dennis McMahon, for claimants.

NELSON, Circuit Justice. The brig Wanderer was coming up slowly on a northwesterly course, preparatory to entering the bay, when the two tugs started in opposite directions for her, advancing the one on a northwesterly, and the other on a southeasterly course, with a view to the job of taking off her passengers, or towing her to the city. The two tugs were a mile or a mile and a half apart when they started for the brig, the Hector being rather nearer to her, but the Maybey being the faster vessel. The proofs are very confused and contradictory. But one question of fact seems to be undisputed, and that is, that both tugs started for the brig about the same time, and each with the avowed intent of reaching her first, so as to secure the job. Orders were given on board each vessel to that effect, and appear to have been carried out with a reckless indifference to the consequences. The tugs met head and head at the brig, the Hector, the smaller vessel, getting the worst of it. It is impossible to say, so contradictory is the evidence, which vessel first arrived at the brig, to speak to her. The truth, no doubt, is, that there was very little difference in point of time, not sufficient, probably, to put either vessel in fault in this respect. As a general rule, no doubt, the tug first arriving to speak for the employment, is entitled to its position, and another approaching must see to it, that a collision is avoided. On this ground alone, I think, the decree below dismissing the libel is justified. In order to sustain the suit, it should have been shown that the Hector had first arrived and was entitled to the privilege of the position. If the Maybey was there first, it was the duty of the Hector to pass on the other side of the brig, or port her helm and pass both vessels to the right. I cannot say, upon the proofs, that she had acquired the privileged position; on the contrary, they are equally strong that the rival tug had gained it.

Considerable pains have been taken to show that the tug approaching the brig in the wake of her course, is entitled to the privilege of first speaking to her, by reason of being in a situation to enter, at once, upon the towing. But, I see no reason or propriety in this view of the case. The first step is to speak to the vessel, and ascertain if she desires assistance. It is time enough to place the tug in a position to tow, after the engagement is made for the service. The Maybey, therefore, had the same right to approach the head of the brig, as the Hector the stern.

The court below put the decision mainly upon the ground that the collision occurred by the wilful fault or intentional wrong of both parties, and that, consequently, the vessel complaining, having voluntarily taken her chances in the collision, must abide the loss. It has been insisted, that admitting this to be so, then, both vessels being in fault, the libel should not have been dismissed, but the damages should have been apportioned. I have found no case where the apportionment has been made in a case like the present, namely, where the collision occurred by the wilful and intentional act of both parties; and I shall not be the first to make the precedent. If two vessels choose, voluntarily, to take the chances of knocking off each other's heads, I shall lay down no rule that will invite the unfortunate one into a court of admiralty for redress. The remedy for the owner is to discharge his master and crew, and man his vessel with competent and prudent hands. The decree of the court below is affirmed.

NOTE. This decree was, on appeal, reversed by the supreme court. See Sturgis v. Clough, 21 How. [62 U. S.] 451. Further proceedings were had and the cause referred to a commissioner to report the amount of damages sustained by libelant, in consequence of the col-

---

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]
2 [Reversed in 21 How. (62 U. S.) 451.]

lision. Exceptions were filed, and the circuit court held that the sum of $3,262.30, allowed by the commissioner, was too large, and it was consequently reduced to $2,162.80. Case No. 11,871. From this the libelant appealed to the supreme court, where the decree of the circuit court was affirmed. 1 Wall. (68 U. S.) 269.]